IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CONRAD L. GREEN,

    Plaintiff,

v.                                            Case No. 2:14-CV-2418-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Conrad L. Green seeks review of the decision of defendant, the Commissioner of Social Security, denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Upon review, the court finds that the Commissioner's decision was not supported by substantial evidence contained in the record. As such, the decision of the Commissioner is reversed and remanded for further consideration consistent with this opinion.

**I.     Procedural Background**

Plaintiff filed for SSI on October 13, 2010, alleging disability beginning January 1, 2006. His claim was denied initially on June 29, 2011, and upon reconsideration on February 10, 2012. Plaintiff timely filed a request for an administrative hearing, which took place on January 7, 2013, before Administrative Law Judge ("ALJ") John Kays. Plaintiff, represented by counsel, appeared and testified. Also testifying was Vocational Expert ("VE") Kristen Saglicco.

The ALJ issued his decision on February 8, 2013, finding that plaintiff suffered from a variety of severe impairments, including diabetes mellitus, testicular pain, small cyst right

1

testicle, arthralgia, back and shoulder pain, morbid obesity, and borderline intellectual capacity/mild mental retardation.  Despite these findings, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He concluded that plaintiff retained the residual functional capacity to perform light work with the following additional restrictions and/or limitations: (1) occasionally lift and/or carry twenty pounds; (2) frequently lift and/or carry ten pounds; (3) stand and walk two hours during an eight-hour workday; (4) sit six hours during an eight hour workday; (5) occasionally engage in postural maneuvers but never climb ladders, ropes, or scaffolds; (6) no exposure to extreme cold; (7) no operating fast-moving hazardous machinery; and (8) only simple repetitive tasks.[1]

The ALJ therefore concluded that plaintiff was not under a disability during the relevant time period.  This decision became the final decision of the Commissioner on June 30, 2014, after the Appeals Council denied review.  On August 22, 2014, plaintiff filed a Complaint in the United States District Court for the District of Kansas seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration.  Given plaintiff's exhaustion of all administrative remedies, his claim is now ripe for review before this court.

In his brief, plaintiff alleges multiple assignments of error against the ALJ, including failure to: (1) use opinions to which he assigned great weight in their entirety; (2) abide by the treating physician rule; (3) assign greater weight to plaintiff's treating physician than the opinions of non-treating, non-examining physicians; (4) find that plaintiff met Listing 12.05B

---

[1] The ALJ also found that plaintiff's grip strength and dexterity were preserved based on Jamar testing done at a consultative examination.

(mental retardation); (5) perform an appropriate credibility analysis; and (6) pose a complete hypothetical to the VE.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at

1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

### III.     Analysis

As noted above, plaintiff alleges multiple assignments of error at steps three, four, and five of the sequential analysis.  Because a decision on one or more of the alleged errors may affect a decision on an error associated with a later step, the court does not discuss plaintiff's allegations in the order in which they were presented in his brief.

**A.     Listing 12.05B**

Plaintiff argues that the ALJ erred in not finding him disabled at step three under the listing for "mental retardation," found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. Listing 12.05 provides as follows:

> 12.05 Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental periods; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . . .
>
> \*\*\*\*
>
> B. A valid verbal, performance, or full scale IQ of 59 or less.

Plaintiff has the burden of presenting evidence establishing that his impairment(s) meet or equal a listed impairment.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Here, plaintiff clearly meets the requirements of subpart (B).  On January 17, 2012, plaintiff completed a Wechsler Adult Intelligence Scale-IV evaluation under the direction of Stanley I.

5

Mintz, which produced a full scale IQ score of 46.  Dkt. 8-1, at 364.[2]  Based on this score, Dr. Mintz determined that plaintiff fell within the mildly mentally retarded range.  Dkt. 8-1, at 364.

However, plaintiff must *also* meet the requirements of the introductory language of section 12.05, commonly referred to as the "capsule" definition, in order to meet the Listing. This requires plaintiff to prove that he has "significant subaverage general intellectual functioning with deficits in adaptive functioning and that this initially manifested before age 22." *Hayes v. Colvin*, 2014 U.S. Dist. LEXIS 163640, at *8-9 (D. Kan. Nov. 20, 2014) (quoting *Bradley v. Astrue*, 2012 U.S. Dist. LEXIS 166084, at *3 (D. Kan. Nov. 21, 2012).  "A loss in adaptive functioning is manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, and pace." *Id*. at *9 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05).

Here, the ALJ found that plaintiff had no restriction with regard to activities of daily living, noting that plaintiff himself reported that he was able to take care of self-grooming and personal hygiene, with some difficulty bending and reaching.  The ALJ found only mild difficulties with social functioning, noting that even though plaintiff did not participate in family events purportedly due to stress, he still maintained relationships with his sisters and attended church on a regular basis.  It was also reported that plaintiff adequately related to others.  With regard to concentration, persistence, or pace, the ALJ concluded that plaintiff had moderate difficulties, noting that plaintiff's concentration appeared diminished and he functioned within

---

[2] Plaintiff's sub-scores were as follows: (1) verbal comprehension, 61; (2) perceptual reasoning, 51; (3) working memory, 50; and (4) processing speed, 50. Dkt. 8-1, at 364.

the mildly mentally retarded range. The ALJ also noted that plaintiff was able to understand simple, but not intermediate, instructions.[3]

Furthermore, plaintiff did not testify about any deficits in adaptive functioning. In fact, the only impairments he mentioned during his testimony were physical (i.e., numbness in his fingers, back pain, and diabetes). He did, however, testify that he worked as forklift operator at a cereal manufacturing plant, at WalMart in the lawn and garden section, and at Jiffy Lube. In a self-statement, plaintiff indicated that while he did not do well with written instructions, he could follow spoken instructions, pay attention, and finish what he started. Dkt. 8-1, at 273.

Based on its review of the record, the court finds that the ALJ's decision with regard to whether plaintiff met Listing 12.05B is based on substantial evidence. Although there may be additional evidence in the record to support plaintiff's argument, the court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman*, 511 F.3d at 1272 (quoting *Casias*, 933 F.3d at 800).

Accordingly, plaintiff's assignment of error fails and is therefore dismissed.

## C. Evaluation of Non-Examining Source Opinions

Among the numerous other errors plaintiff alleges the ALJ made in assessing residual functional capacity, plaintiff claims that the ALJ assigned inappropriate weight to the opinions of non-treating, non-examining physicians. More specifically, plaintiff takes issue with the weight assigned to state examiners Dr. Margaret Burke and Dr. George Stern, whose opinions received

---

[3] In his decision, the ALJ specifically noted that plaintiff did not meet 12.05B because there were no records of other testing or school documentation supporting a "longitudinal history" of such a low full-scale IQ. Dkt. 8-1, at 20. As plaintiff correctly notes, longitudinal documentation of low IQ is not necessary in determining whether a claimant meets 12.05B. What *is* necessary, however, is a determination of whether a claimant meets the capsule definition contained in 12.05. Although the ALJ did not specifically attribute his findings with regard to activities of daily living, social functioning, and concentration/persistence/pace to finding that plaintiff did not meet 12.05B, he did include them in his general discussion of 12.05. Given the inclusion of these findings in the ALJ's opinion, the court finds it reasonable to use them as a basis for its decision.

"greatest" and "great" weight, respectively. According to plaintiff, by assigning such weight to these opinions, the ALJ was required to use them in their entirety. Instead, plaintiff claims, the ALJ "cherry-picked" those limitations with which he agreed, and disregarded the others, despite the objective medical evidence. In response, the Commissioner argues that the ALJ was not required to accept these opinions in their entirety and, even if he was, such error was harmless because none of the jobs identified by the VE were affected by the limitations that the ALJ rejected. The court disagrees.

As a general rule, "[m]edical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations." *Neil v. Colvin*, 2013 U.S. Dist. LEXIS 151376, at *6. *See also* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 SSR LEXIS 2 (July 2, 1996). Relevant factors the ALJ may consider include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted). "Evidence from non-examining medical sources such as state agency psychologists is considered opinion evidence." *Neil*, 2013 U.S. Dist. LEXIS 151376, at *7. *See also* 20 C.F.R. §§ 404.1527(f), 416.927(f). "ALJ's are not bound by such opinions, but must consider them." *Neil*, 2013 U.S. Dist. LEXIS 151376, at *7. These opinions must be evaluated using the above enumerated factors, and the ALJ must explain the weight given them. *Id*. at *7-8.

On June 28, 2011, Dr. Burke issued a Physical Residual Functional Capacity Assessment in which she found that plaintiff could: (1) occasionally lift and/or carry twenty pounds, (2) frequently lift and/or carry ten pounds, (3) stand and/or walk at least two hours during an eight-hour day, (4) sit for about six hours during an eight-hour day, and (5) engage in unlimited pushing and pulling. Dkt. 8-1, at 319. Dr. Burke further determined that plaintiff could occasionally climb (although never ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and crawl. Dkt. 8-1, at 321. She also determined plaintiff had limited feeling due to self-reported diminished sensation in his hands. Dkt. 8-1, at 321.

The ALJ assigned Dr. Burke's opinion "greatest" weight. However, in his residual functional capacity assessment, the ALJ failed to include any limitation based on plaintiff's diminished sensation in his hands. In fact, the ALJ specifically found to the contrary, stating "grip strength and dexterity preserved based on Jamar testing at consultative evaluation." Dkt. 8-1, at 21.

Similarly, Dr. Stern noted that plaintiff had impaired memory/understanding and "difficulties with maintaining concentration, but could follow a simple routine without special supervision." Dkt. 8-1, at 76. Dr. Stern also found that plaintiff: (1) was moderately limited in his ability to interact appropriately with the general public and, as such, could only work in jobs requiring infrequent social interactions; (2) would have difficulty using public transportation/traveling to unfamiliar places; and (3) would have difficulty making independent goals and plans. Dkt. 8-1, at 76-77.

Again, however, the ALJ's decision made no mention of these last three limitations. The ALJ merely limited plaintiff to "simple repetitive tasks." Dkt. 8-1, at 21. There is no indication

that plaintiff would have difficulty interacting with the general public, using public transportation and/or traveling to unfamiliar places, or making independent goals and plans.

The court does not intend to imply that each of the limitations opined by Drs. Burke and Stern were, or must be, accepted by the ALJ. Nor does it intend to imply that each of the limitations opined is of such a degree as to have a significant effect on plaintiff's workplace or on the number of jobs which he is able to perform. However, it seems clear that those limitations seemingly ignored by the ALJ have at least the *potential* to conflict with the residual functional capacity assessed. "It is the ALJ's responsibility to explain how any ambiguities and material inconsistencies in the evidence were considered and resolved, and to explain any conflicts between his [residual functional capacity] assessment and every medical opinion." *Neil*, 2013 U.S. Dist. LEXIS 151376, at *10 (citing SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)). Here, the ALJ stated that he gave "greatest" and "great" weight to the opinions of Drs. Burke and Stern, which certainly implies that he agreed with all of their findings. Nowhere does the ALJ discount any portion of these examiners' findings; he simply adopts them in total yet fails to explain any ambiguities or how he resolved the apparent discrepancies between his residual functional capacity assessment and these opinions. An ALJ "may not pick through a medical report, choosing those portions which are favorable to his decision, and ignoring those portions which are not." *Id*. at *10 (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).[4]

---

[4] Because plaintiff's additional assignments of error deal with the balance of the ALJ's assessment at step four and his decision at step five, the court declines analysis.

**IT IS THEREFORE ORDRED** this 14th day of July, 2015, that the decision of the Commissioner shall be **REVERSED** and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** this case for further proceedings consistent with this decision.

s/J. Thomas Marten  
J. Thomas Marten  
Chief Judge